Nos. 9361, 9362.

C. F. Adams Company v. City and County of Denver.
Bixler v. City and County of Denver.

Peddler—*Who Is.* A merchant who maintains a valuable stock of goods at one place for years, paying taxes thereon, and selling goods at that place, as other merchants do, is not a ped-

dler merely because he sends out men with wagons and samples of goods, instructed to exhibit and take orders for the goods, but who are prohibited from selling from the wagons.

OCCASIONAL sales by these employees in violation of the custom of the merchant, and his instructions to the employe, do not change their result.

THE merchant prosecuted as a peddler is entitled to show the permanency of his business, the value of his stock, and his payment of taxes thereon, as tending to negative the idea of itineracy, necessary and controlling in defining the occupation of a peddler.

*Error to Denver County Court, Hon. Ira C. Rothgerber, Judge.*

Mr. D. L. WEBB, for plaintiffs in error.

Mr. JAMES A. MARSH and Mr. JACOB J. LIEBERMAN, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

THESE cases were consolidated and tried together. Both the defendant, The C. F. Adams Company, and the defendant, Bixler, were separately charged with the violation of the provisions of an ordinance of the City and County of Denver relating to peddlers without first having obtained a license as a peddler. These provisions are:

Sec. 1406. "License required. It shall be unlawful for any person to carry on the business of a peddler without first obtaining a license therefor as herein required.

Sec. 1407. Definition of peddlers. Every person who shall sell or offer for sale, barter, or exchange, at retail, any goods, wares, merchandise, fruits, vegetables, or country produce, traveling from place to place on, along, or upon the streets of the city and county, or who shall sell and deliver from any wagon, pushcart, or other vehicle going from place to place, any goods, wares, merchandise, fruits, vegetables, or country produce, or who shall go about from place to place selling and delivering goods, wares, merchandise, fruits, vegetables, or country produce, shall be deemed a peddler."

The defendants were tried and convicted before a jus-

tice of the peace and upon appeal tried *de novo* and convicted before the County Court. This judgment is now before us for review.

The trial was before a jury, but the court directed a verdict. It appears that the defendant Bixler is the general manager of the defendant corporation. The defendants made the following offer of proof, which was rejected by the court:

"The defendant now offers to prove before the jury that the defendant, C. F. Adams Company, is and for at least twenty years has been an established merchant in the City of Denver; that it is maintaining its place of business permanently at 1444 Curtis street, at which point it has carried at all times a substantial stock of goods of an average of $25,000; that it sells its goods at that place, as does any other merchant; that it takes orders for goods over the 'phone and by mail, as does any other merchant; that it handles its own goods exclusively; that the goods are sent here from another state, as are practically all such classes of goods; that the defendant Bixler is not an officer of the company, but merely an employe; that the practice and the custom of the C. F. Adams Company is to send out men with wagons with samples of goods thereon, and a catalogue covering those goods, which the defendant the Adams Company has for sale that are not included among the samples in the wagon; that those men are instructed to exhibit those samples and take orders from them and from their catalogue, and not otherwise; that they are prohibited from selling goods from the wagons, and that their orders and instructions are to exhibit them, and if they interest a customer, to take an order upon a white order slip, which defendant Adams Company now offers in evidence."

The court reversed this ruling to the extent that it permitted all such proof, except as to the value of the stock of goods; that it had maintained a place of business for twenty years; the location thereof, and that it had during such period paid taxes on its stock of goods as in case of other merchants.

The order rejecting this offer of proof was fatal error, for, if true, it presented a complete defense to the charge against each defendant.

That the defendant corporation maintained and had maintained a regular place of business in the city and carried a valuable stock of merchandise upon which it paid taxes as other merchants was vital to the cause of the defendants, for it tended to negative the suggestion of itineracy, necessary and controlling in defining the occupation of a peddler, for which the license was required.

The testimony of defendant Bixler stands without dispute and confirms entirely the offer of proof, save where such offer of proof was denied by the court.

He testified that he was the only representative of the company in Denver, and in sole charge of its business; that the company has several salesmen, each of whom was provided with a catalogue, printed in colors, illustrating, describing and pricing the articles in which the company deals, which seem to be mainly rugs, curtains, tapestry, floor sweepers, washing machines, tubs, wringers, clocks, etc.

That the company maintains one or more wagons for delivery, and for carrying samples for one or more employes. The employes at times walk and carry their samples. Each salesman is provided with blank orders, which are required to be signed by the person making the order, and which, together with an agreement to the effect that title to the property is not to pass until fully paid for. These are turned into the company and the goods are thereafter delivered to the purchaser. The plan is to sell on deferred stated payments. Sales are also made directly from the store to purchasers, and by means of telephone calls.

The city relies on four sales, all by one Rankin, employed by the company, and who has charge of a wagon. Rankin was employed on a salary. As to two of these sales, there is no testimony showing conflict with the rule of the company.

Bixler testifies as to Rankin's instructions as follows:

"My instructions to Rankin was that he was to go out and solicit orders, and he was supplied with a form for that purpose, and he was only to solicit orders, not to make a sale of any kind, and when he made these solicitor's orders he was supposed to hand them in on the following morning, and at that time the orders were filled out. In the event that he would go contrary, conduct the business any other way, he was going absolutely contrary to my instructions, and he was not only instructed verbally, but in writing from time to time how I wanted the business conducted."

One of these sales was made to a Mrs. Saffell, who testifies that she purchased a pair of lace curtains, for which she was to pay $4.50 at fifty cents a week. That Rankin told her he had some samples of lace curtains and that she permitted him to exhibit them to her; that he left the curtains that day, and that within a week another man came and collected fifty cents on the purchase price.

Bixler testifies that if Rankin sold and delivered curtains from his samples, it was contrary to his instructions and without his knowledge.

The other case was that of a sale to a Mrs. Lirupello, and Bixler testifies that he learned that there had been such a sale the next day after it occurred. That he at once sent for the merchandise and put it back in the stock, and that Mrs. Lirupello did not afterward receive or purchase the goods. This seems to be the substance of the testimony in the case and there is no testimony in the record to indicate that either the company or Bixler, the manager, had knowledge of either sale at the time it was made, or countenanced it, while it is not contradicted that the conduct of the solicitor was in direct conflict with instructions to the contrary.

There are several assignments of error, but it is important to consider but one, and that is that the testimony does not show a violation of the city ordinance either upon the part of the company or its manager, and that for such reason the court erred in his order for an instructed verdict.

We think that under the state of facts presented in this case, there was no violation of the ordinance. This view is clearly sustained by the following authorities: *Kennedy v. People,* 9 Colo. App. 490; *Eaton v. People,* 46 Colo. 361, and as to the isolated sales appearing in this case, they were without the knowledge or consent of the defendants, and clearly not within their rule or custom of doing business, and were in violation of positive instructions, and therefore can not be held to bind the defendants.

It was held in *Commonwealth v. Farnum,* 114 Mass. 270, that such isolated sales were not the custom of the company, nor within the scope of the salesman's employment, and could not therefore constitute a violation of the statute. It was there said:

"The fact that he occasionally delivered the sample machine to a purchaser, desirous of obtaining one immediately, can not so change the character of his business as to bring him within the statute. Nor did the fact that he sold one attachment, and one tuck-marker, capable of being attached, render him liable; it distinctly appearing that it was not his practice to make such sales. The question is to be determined on the general character and scope of his business; if this does not bring him within the statute, he is not liable for single sales of particular articles, such sales being exceptional, and not in the course of his ordinary employment."

This doctrine seems to be supported by the great weight of authority.

The judgment is reversed.

Garrigues, C. J., and Denison, J., concur.